Mary Mason, Administrator for Estates of Jake Mason, deceased, Phyllis Mason, deceased, Patricia Mason, deceased, Lovella Mason, deceased, Wayne Mason, deceased, Charlene Mason, deceased, and Luedna Simon, deceased, and Mary Mason, individually, Plaintiffs, LeRoy G. Charles and Adlert M. Cartman, Jr., Intervening Petitioners, Appellants, v. Spiros Papadopulos et al., Defendants, Henry Nierman, Respondent, Appellee.

Gen. No. 46,728.

First District, Second Division.

November 27, 1956.

Released for publication January 8, 1957.

LeRoy G. Charles, and Adlert M. Cartman, Jr., both of Chicago, pro se; LeRoy G. Charles, of Chicago, of counsel.

Eckert, Peterson & Lowry, of Chicago, for appellee; A. R. Peterson, Harold W. Huff, and Herbert C. Loth, Jr., all of Chicago, of counsel.

JUDGE McCORMICK delivered the opinion of the court.

The Circuit Court of Cook County on March 29, 1955 after a hearing entered an order dismissing two intervening petitions to enforce attorneys' liens, which also asked for judgment for attorneys' fees against the respondent Henry Nierman. From this order Charles and Cartman, petitioners, bring this appeal.

In the first petition it was alleged that on December 12, 1950 Sallie Perry, mother of Luedna Simon, deceased, had retained petitioners as her attorneys to represent her in a certain claim as administratrix of the estate of, and as one of the heirs and beneficiaries of, the said Luedna Simon against Henry Nierman, one of the defendants and the respondent in the case be-

142

fore us. Under the contract set up in the petition Perry employed the petitioners as her attorneys and agreed to pay them 50% of any sum which she might recover on a trial and 33⅓% in case of a settlement. It was alleged that notice of the lien was served on the respondent; that subsequently one Mary Mason as administratrix of certain estates, including that of Luedna Simon, through another attorney, instituted suit; that a settlement was effected therein in the amount of $2,000 and the petitioners are entitled to recover from the respondent the sum of $1,000, for which sum they pray judgment.

The second petition sets up that Mary Mason had retained the petitioners as her attorneys in a claim for personal injuries suffered by her and to represent her as administratrix of the estates of her husband and five children, in which she was the sole beneficiary. The alleged contract with Mason had the same provisions as the contract with Perry as set out in the first petition. Petitioners alleged that notice of the lien had been served and that Mason subsequently, individually and as administratrix, commenced a suit against the respondent, which was settled for the sum of $9,000. Petitioners allege that they are entitled to the sum of $4,500 and pray judgment against the respondent.

A motion to strike the first petition and an answer to the second petition were filed by the respondent, and petitioners filed a reply.

The instant suit (in which the intervening petitions were filed) was brought through one Anderson, an attorney, by Mary Mason, who was appointed administratrix of the estates of her husband and five children and of Luedna Simon. Petitions seeking authorization to settle the suit were also filed by her through her attorney in the Probate Court, and it was stipulated that a settlement of $9,000 for the seven death claims and for the individual injuries of Mason was approved.

143

The answer to the intervening petitions and the reply thereto raised the issue that the contracts between the petitioners and Mason and Perry were obtained by solicitation and were therefore void.

The petitioners contend that the contracts which had been entered into by them with Sallie Perry and Mary Mason, by which Mason and Perry agreed to retain the petitioners as their attorneys on a contingent basis in all matters concerning claims against the respondent Henry Nierman which arose out of the personal injuries suffered by Mary Mason, the death of her husband and five children, and the claim which Sallie Perry had with reference to the death of her daughter, were valid and binding contracts; that proper notice had been served on the respondent in accordance with the Illinois statute; that the petitioners were discharged without good cause by Mason and Perry, and that when the respondent settled the claim she became liable to the petitioners under the contracts.

The respondent's theory is that the petitioners did not sustain the issues raised by the answer and the reply thereto that the contracts were fairly and properly made; that the contract with Sallie Perry should not have been recognized since Sallie Perry was not a party to the action for the alleged wrongful death of her daughter Luedna Simon, nor was she the administratrix of the estate of Luedna Simon, nor the sole beneficiary thereof, and that the petitioners could not assert a lien based on such contract against the defendant in the Circuit Court.

██ ██ From the pleadings it appears that an answer was filed to the intervening petition with reference to the claim under the contract with Mary Mason and a motion to strike was filed with reference to the claim of the petitioners under the contract with Sallie Perry. On the hearing it was apparently tacitly agreed by the parties in court that the claim of Sallie Perry

144

would be treated with the motion to strike standing as an answer. With reference to the claim made under the contract signed by Mary Mason, the respondent urges that the contract could not be binding upon Mary Mason in her capacity as administratrix because it was entered into before her appointment and no order of court was subsequently entered approving the contract. That question has been definitely and decisively settled by the decisions of this court where the party entering into the contract is the sole beneficiary. It has been held that while the Attorney's Lien Act may not give an attorney a lien on the funds held by an administrator, since the administrator has no authority to charge such funds with the payment of attorney's fees, nevertheless there is a lien which is sufficient to compel the defendant from whom the fund is recovered to account to the attorney if his rights are ignored after notice thereof. Abrams v. Berg's Market and Liquor Store, 317 Ill. App. 380; Bennett v. Chicago & E. I. R. Co., 327 Ill. App. 76; Ryan v. Chicago, M. St. P. & P. R. Co., 259 Ill. App. 472. It is not necessary for an administrator to secure the approval of the Probate Court of such a contract for legal services. Bennett v. Chicago & E. I. R. Co., supra, p. 81.

██ The case of Abrams v. Berg's Market and Liquor Store, supra, was a suit brought for attorney's fees under the attorney's lien statute. In that case the allegations in the pleadings were that the plaintiff had entered into a contract with one Evelyn Smith, the mother of a deceased minor, to employ plaintiff as attorney to recover damages for the wrongful death of the said minor, and that subsequently an administrator of the estate of the deceased minor had, without the knowledge or consent of the plaintiff, made a settlement. The trial court dismissed the statement of claim on the motion of the defendant. The Appellate Court reversed the trial court, holding that Evelyn Smith as sole beneficiary had the right to settle the claim against

the defendant and since such settlement, if made, would have been a bar to any suit brought by the administrator of the estate, she also had the right to hire an attorney to represent her in the matter of her claim against the defendant; and the fact that Evelyn Smith had not been appointed administrator, but that a trust company had been, is immaterial. The court cites Mattoon Gas Light & Coke Co. v. Dolan, 105 Ill. App. 1, 4; Voorhees v. Chicago & Alton R. Co., 208 Ill. App. 86, 93; Ryan v. Chicago, M. St. P. & P. R. Co., 259 Ill. App. 472; Washington v. Louisville & N. Ry. Co., 136 Ill. 49, 56; Henchey v. City of Chicago, 41 Ill. 136. The instant contract was a valid and enforceable contract with Mary Mason, both in her capacity as administratrix and as an individual and would support an action under the Attorney's Lien Act.

██ Sallie Perry was the mother of Luedna Simon and Mary Mason. The statute of distribution (par. 162, ch. 3, Ill. Rev. Stat.) pertaining to the administration of estates provides that where the deceased leaves no surviving spouse or descendant but has surviving parents, brothers and sisters etc., the entire estate shall descend to the parents, brothers and sisters of the decedent in equal parts, allowing to the surviving parent, if one is dead, a double portion. Sallie Perry was not the sole beneficiary of Luedna Simon since Mary Mason was a surviving sister of Luedna Simon. Sallie Perry was not appointed administratrix of the estate. Under the law as set forth in the preceding cases she could only make a contract with the petitioners which would bind her individually with reference to her claim as one of the beneficiaries of the estate of Luedna Simon, and such contract would not bind an administratrix subsequently appointed in the estate. The petition with reference to the claim based on the contract with Sallie Perry was properly dismissed.

146

The only question then left before us to determine is whether or not the respondent has sustained the burden of proving that the contract with Mason was void because it was obtained through the unlawful and unethical solicitation of the petitioners.

■ It is the rule that where the question of solicitation is raised in order to defeat an attorney's lien, the burden of proof rests upon the party attempting to show that the lien is void by reason of solicitation. Ryan v. Pennsylvania R. Co., 268 Ill. App. 364, 379. The uncontradicted testimony in the record is that on the morning of the fire in which the decedents were killed, Cartman, who had been admitted to the bar in 1950, was approached by one Curry, a man whom he had known for some months and whom he believed to be the husband of Luedna Simon, daughter of Sallie Perry and sister of Mary Mason. At Curry's request Cartman went to the police station to discuss with Mrs. Mason his employment as her attorney to protect her interests. He was introduced to her by either Douglas, the undertaker, or Curry. She told him that she did not want to talk about the matter then, and he told her that if she wanted to see him to have Douglas or Curry get in touch with him. Cartman's uncontradicted testimony was that Douglas later asked him to see Mrs. Mason and that he did see her that evening at about 5:30 or 6:00. He asked her to sign a contract engaging him as attorney. A minister who was there told Cartman not to bother her because she was in no condition to sign papers and told Mrs. Mason that he would check on Cartman and if he found Cartman was alright he would let her know. She did not remember if the minister subsequently contacted her. Again on the same evening, when called by Douglas, Cartman with Charles, the other petitioner, again went to the house where Mrs. Mason was, and at that time at about 7:30 or 8:00 in the evening they discussed the matter at

length, and she signed an agreement appointing Cartman as her agent and attorney to act for her. Subsequently on December 11th she signed the contract on which the second petition was based. On December 12th Sallie Perry affixed her mark to the contract upon which the first petition was based. Subsequently an attorney Anderson was brought into the case by a certain Brown who, according to the testimony of Mrs. Mason in the hearing in the trial court, solicited her to employ Anderson as her lawyer. At the instigation of Anderson she signed an affidavit at the hearing before the Chicago Bar Association on the complaint made by the petitioners against Anderson, which affidavit stated that she had asked Brown to recommend a lawyer to her. On the instant hearing she denied that she had made such a statement and stated that such statement was not true. The Chicago Bar Association apparently exonerated Anderson, and the question as to whether or not he had solicited the case has nothing to do with the issues before us. There was no question raised as to the legal competency of the petitioners and apparently if it had not been for the interjection of Anderson into the case they would have continued as attorneys for Mason and Perry.

 In support of his contention that the petitioners solicited employment as attorneys, counsel for respondent have cited a number of cases, relying principally upon the case of Brinks, Inc. v. Gravesen, 309 Ill. App. 571. In that case, however, the first contact with the family of the injured minor was through a Mrs. Fox, who was found by the trial court to have been acting for the attorney at the time she first appeared at the hospital and asked the parents to employ him. In the instant case the first contact with the parties involved was through a person who, at least as far as the attorney was concerned, was considered to have been a member of the family. In Morris v. Pennsylvania R. Co., 10

Ill.App.2d 24 (leave to appeal denied, 11 Ill.App.2d i), this Division handed down an opinion dealing with the right of an attorney to enforce an attorney's lien for fees against the Pennsylvania Railroad Company, which had made a settlement of the case disregarding the alleged rights of Morris under the lien on the ground that his contract of retainer had been obtained by solicitation. We there held that an attorney's contract of retainer, if obtained through solicitation, was void and unenforceable, and cited the applicable cases. We also held that the undisputed testimony disclosed a clear pattern of persistent solicitation by one Forbes to obtain the claim of the injured party for the petitioner and that Forbes from the unrebutted testimony was the agent of Morris. On the ground that the judgment of the trial court was against the manifest weight of the evidence we reversed and remanded the cause. On motion of the petitioner later in accord with section 75 of the Practice Act [Ill. Rev. Stats. 1955, ch. 110, § 75] we struck the order of remandment, and subsequently his petition for leave to appeal to the Supreme Court was denied. The instant case does not present the same factual situation in that there was nothing in the evidence to indicate that John Curry, who had asked petitioner Cartman to see Mrs. Mason, was an agent of the intervening petitioners. From the uncontradicted evidence it appears that subsequent contacts of the petitioners were made pursuant to calls from the undertaker in accordance with the instructions given by petitioner Cartman to Mrs. Mason at the time when he first saw her.

██ An attorney should be exceptionally scrupulous in making contact with new clients. However, an attorney has the right to get in touch with a person who has a legal right at stake if, through communications received from persons whom he believes to be either a member of the family or a friend, he in good

faith is led into the belief that the prospective client desires to see him. In re Mitgang, 385 Ill. 311. Over-eagerness of an attorney to get a case brings the legal profession into bad repute. Still, unless there is actual solicitation the contract is not rendered void. In the case before us solicitation was not proved.

■ ■ The respondent also urges that the contract was an unconscionable one inasmuch as it provided for a payment of 50% of any recovery if it was through trial and 33⅓% if it was through settlement. This case arose out of a fire in which the husband and five children of Mrs. Mason were killed, together with Luedna Simon, her sister. An attorney's lien is purely a creature of statute (Ill. Rev. Stat. chap. 13, par. 14), and the Act must be strictly construed. Haj v. American Bottle Co., 261 Ill. 362. The question of fees under an attorney's lien has previously been before this court many times. In Noonan v. Chicago Motor Coach Co., 324 Ill. App. 519, where a client had successively employed three attorneys on contingent fee contracts calling respectively for one-third, one-half and one-third of the total recovery, and discharged the first two attorneys, and while the second attorney was representing the client the first attorney had agreed in writing to accept one-sixth of the total amount collected, and the third attorney secured a judgment for the client for $7,500, it was held that an order awarding the first attorney $687.50 for his services without an attorney's lien, awarding the second attorney a lien for $850, and awarding the third attorney a lien for $2,500 and directing the court to pay over such amounts to the several attorneys and balance to the client was proper. In Reinholdt v. Mobrich, 1 Ill.App.2d 223, it was held that where the attorney who represented an estate in a wrongful death action under a valid contract whereby he would receive one-third of the amount recovered was replaced before the action was settled, and

where he perfected a lien for his compensation, a judgment against the defendant for one-half of the amount called for by the lien was proper. In Gorton v. Norris, 319 Ill. App. 525, a woman eighty years old, who had been severely injured, entered into contracts with three attorneys to prosecute her case and agreed to pay each of them one-third of any amount recovered by suit and one-fourth of any amount recovered without suit. Suits were filed by two of the attorneys, which suits were consolidated, and the claim was later settled for $3,600. Two attorneys filed separate petitions to establish their respective liens. Mrs. Gorton asked to have the liens adjudicated, and admitted the employment of the third attorney and the validity of his lien. The court found that one attorney should be awarded $200, another $800, and the third $200. The appeal was taken by the executrix of the estate of an attorney who had been awarded $200 by the trial court, and she urged that the power of attorney signed by Mrs. Gorton is controlling and that as a matter of law the court had no right to award fees other than that provided in the writing. The court said:

"The executrix takes the position (citing cases) that the power of attorney signed by Mrs. Gorton is controlling, and that, as a matter of law, the court had no right to award fees on any basis other than that provided in the writing. Barnes v. Barnes, 225 Ill. App. 68; Caruso v. Pelling, 271 Ill. App. 318; Goldberg v. Perlmutter, 308 Ill. App. 84. She contends that the client could not deprive the attorney of his lien by discharging him. Tulka v. Chicago City Ry. Co., 259 Ill. App. 234. These cases so hold under circumstances appearing in each. . . .

"We do not care to rest our decision on any merely technical ground. The executrix is the only party complaining. She asks judgment for one-third of the entire amount obtained in settlement. If each lien claimant

151

was made a like allowance, there would be nothing at all left for Mrs. Gorton. The lawyers would take it all. . . . The statute contravenes the common law. It is to be strictly construed. Berkemeier v. Dormuralt Motor Sales, 263 Ill. App. 211, 218. The proceeding is purely statutory. It is, strictly speaking, neither at law nor in equity. . . .

"If we were to hold the executrix entitled to one-third of the whole amount recovered to the exclusion of other lawyers, the result would be unjust. We hold the trial court attained substantial justice."

▇▇▇ Here a suit was filed and it was stipulated that the Probate Court had approved a settlement of $9,000 for all the claims. Under the terms of the contract between Mrs. Mason and the petitioners she agreed to pay them 50% of any sum which she might recover on trial in court and 33⅓% of any sum which she should "receive in settlement." There was no trial in court, so the first portion of the contract is inapplicable, and on oral argument before us the petitioners abandoned their claim for 50%. There is no evidence in the record as to whether or not Mrs. Mason or her attorney Anderson has received any money from the settlement. On oral argument the petitioners stated none of the money had been paid to Mrs. Mason. A condition precedent to their enforcement of the contract would be proof of her receipt of money in settlement and the amount thereof. Berkos v. Aetna Life Ins. Co., 279 Ill. App. 243. Under the particular circumstances in the case before us we feel that the trial court, after a hearing, should determine the amount which was actually received by Mrs. Mason, if any, and also determine the attorneys' fees to which the petitioners are justly entitled and enter a judgment against respondent accordingly.

The order of the Circuit Court insofar as it dismisses the petition based on the contract with Sallie Perry is

affirmed, but it is reversed as to the dismissal of the petition based on the contract between petitioners and Mary Mason, and the cause is remanded for further proceedings in accordance with this opinion.

The respondent filed an additional abstract in this court, which was necessary for us to use in our determination of the issues involved. Costs, including the additional abstract, are taxed one-half against the appellee and one-half against the appellants.

Affirmed in part; reversed in part and remanded.

ROBSON, P. J. and SCHWARTZ, J., concur.